**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RAMONE CURTIS WALKER**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 2:21-0528-KSM** |
| **COURTNEY A. KEMP, et al.**, | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                    **February 28, 2022**

Plaintiff Ramone Curtis Walker, the author of *Blinded by Love*, brings copyright infringement claims against Defendants Courtney A. Kemp, End of Episode, Inc., Atmosphere Entertainment MM, LLC, Mark Canton, G-Unit Film & Television, Inc., Starz Entertainment Group, LLC, AXN Network, Inc., CBS Broadcasting Inc., Sony Pictures Entertainment Inc., Sony Pictures Home Entertainment Inc., and Sony Pictures Entertainment Online Inc. (the "Defendants"),[1] the creators and distributors of the television series *Power*.  (Doc. No. 1.) Presently before the Court is Defendants' Motion to Dismiss.[2]  (Doc. No. 25.)  For the reasons below, the Motion to Dismiss is granted.

**I.      BACKGROUND**

Taking the allegations in the complaint as true, the facts are as follows.  In 2007, Plaintiff

---

[1] The Complaint also names as defendants Will Packer Productions, Inc., Allarco Entertainment L.P., doing business as Super Channel, and Allarco Entertainment 2008, Inc., doing business as Super Channel (*see* Doc. No. 1); however, Walker never served these parties (*see* Doc. No. 5), so these parties shall be dismissed from the case with prejudice.

[2] The Court held oral argument on Defendants' Motion to Dismiss on February 23, 2022.  (Doc. No. 35.)

1

wrote *Blinded by Love*, a novel about a Philadelphia drug dealer who falls in love with the

District Attorney.  (Doc. No. 1 ¶ 29.)  Plaintiff also complied a "bible," an encyclopedia-type

document that lists *Blinded by Love*'s characters, setting, and plot points.[3]  (*Id.* ¶ 32.)  Walker

copyrighted the novel and the "bible" (*id.* ¶¶ 31, 33), and *Blinded by Love* was published in 2012

(*id.* ¶ 17).  When it was first published, Walker "promoted and marketed" the novel at

"nationally renown[ed] book trade shows"[4] (*id.* ¶ 18), and it is available for purchase on Amazon

(*id.* ¶ 17).

According to Plaintiff, following its release, *Blinded by Love* "made its way into the

possession" of Defendants, and they used it as inspiration for *Power*, a television series about a

New York drug kingpin who falls in love with an Assistant United States Attorney.  (*Id.* ¶¶ 19–

21.)  *Power* premiered on Starz in 2014 and has proven very successful:  it aired for six seasons

and led to three spin-offs (*Power Book II: Ghost*, *Power Book III: Raising Kanan*, and *Power

Book IV: Force*).  (*Id.*)

Brief descriptions of *Blinded by Love* and *Power* follow.

**A.      Blinded by Love**

*Blinded by Love* tells the story of Andre Ellis, a Philadelphia drug dealer and

entrepreneur who owns a restaurant and real estate business.  Andre and his lifelong best friend

Malcom have been partners in the drug business for years and together they decide to take their

drug trafficking to the next level and start an organization known as the "Brotherhood."  (*Blinded

by Love* at 11.)  The Brotherhood will bring together the Philadelphia neighborhood drug dealers

---

[3] At oral argument, Walker's counsel stated that the "bible" is derivative of the novel.

[4] The Court notes that at oral argument Walker's counsel stated that one of the renowned book trade shows was the Harlem Book Fair which Walker attended in the summer of 2012 prior to his book being published.

and enable Andre and Malcolm to corner the Philadelphia drug market. (*Id.*) Andre and Malcom are willing to eliminate anything—or anyone—that stands in the way of the Brotherhood's success. (*E.g.*, *id.* at 25, 77.)

At the same time the Brotherhood starts to operate, Andre's mother introduces Andre to her neighbor, the recently elected District Attorney Renee Williams. (*Id.* at 16–18.) Although he recognizes the risk of growing close to a prosecutor given his criminal activity, Andre falls in love with Renee and after a quick courtship, the two get married. (*Id.* at 114.) Renee does not know that Andre is a drug dealer, let alone the mastermind of the "Brotherhood." (*Id.* at 244.) As District Attorney she is being kept updated regarding law enforcement's investigation of the Brotherhood, and Renee often shares confidential information related to the investigation with Andre. (*E.g.*, *id.* at 98.)

Meanwhile, Malcom does not approve of Andre's relationship. (*Id.* at 137.) Although he is pleased that the Brotherhood can stay one step ahead of law enforcement, he worries that Andre is prioritizing Renee over their drug business and will unwittingly compromise the Brotherhood. (*Id.* at 44, 88.) And, as the Brotherhood continues its murderous rampage, Andre and Malcom disagree about the direction the organization should take. (*Id.* at 146.) Frustrated about this disagreement and jealous that Andre is spending so much of his time with Kennedy, Malcom steals a shipment of drugs from Andre and threatens to reveal the true source of Andre's wealth to Renee unless he pays Malcom $2 million in hush money. (*Id.* at 143–44, 214, 220–23.) In the end, Renee's sister, a detective with the Philadelphia Police Department, alerts Renee to Andre's role in the Brotherhood. (*Id.* at 244–46.) Ultimately, Renee tricks Andre into confessing to his involvement with the Brotherhood, and he is convicted for his crimes and sentenced to death. (*Id.* at 270–73.)

### B.    *Power*

*Power* tells the story of James "Ghost" St. Patrick, a businessman and the head of a major drug ring in New York City.  (*Power*, Season 1, Ep. 1 at 2:00.)  Together with his childhood best friend, Tommy, Ghost owns dozens of laundromats, which, fittingly, he uses to launder his drug money.  (*Id.*)  Ghost lives in a posh Manhattan penthouse with his wife, Tasha, and their three young children.  (*Id.*, Season 1, Ep. 1 at 9:45.)

In the first episode of the series, Ghost opens a nightclub, which he hopes will provide him with a way out of the drug business.  (*Id.*)  One night while at his nightclub, Ghost runs into his high school sweetheart, Angela Valdes.  (*Id.*, Season 1, Ep. 1 at 34:35.)  Unbeknownst to Ghost, Angela is now an Assistant United States Attorney and working on a taskforce investigating Ghost and Tommy's drug source, Felipe Lobos, the leader a Mexican drug cartel. (*Id.*, Season 1, Ep. 1 at 53:00.)  The two have an affair, but they do not discuss work, and Ghost does not learn that Angela is a prosecutor until Season Two.  (*Id.*, Season 2, Ep. 1 at 51:00.)

Over its six seasons, *Power* has many story lines, including the love triangle between Tasha, Ghost, and Angela (*id.*, Season 1); Ghost's attempts to leave the drug business (*id.*, Season 1–6); Ghost's mentor's plan to seek revenge against Ghost for sending him to prison (*id.*, Seasons 1–4); Ghost's wrongful arrest for murder and his time in prison (*id.*, Season 4); Ghost's political ambitions and eventual run for Lieutenant Governor of the State of New York (*id.*, Season 6), and Ghost's increasingly tumultuous relationship with his son (*id.*, Seasons 5–6).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Zuber v.*

*Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quotation marks omitted).  In reviewing a motion to dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations.  *Id.*  However, the court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Id.* (cleaned up).  In a copyright infringement case, "[t]he copyrighted and allegedly infringing works will necessarily be integral to an infringement complaint and are therefore properly considered under Rule 12(b)(6)."  *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018). [5]

### B.  Copyright Infringement

To state a claim for copyright infringement, the copyright holder must allege "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."  *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (internal citations omitted).  To establish copyright infringement, a

---

[5] Walker argues that "[i]f this Court is required to rely upon matters outside of the pleadings this motion should properly be converted to one for Summary Judgment and the ruling thereon stayed until the completion of discovery."  (Doc. No. 29-3 at 14.)  But Walker ignores the Third Circuit's directive in *Tanksley* that we can—indeed, that we should—consider the copyrighted and allegedly infringing works in deciding this motion.  *Tanksley*, 902 F.3d at 172.

plaintiff must show that the allegedly infringing work is "substantially similar" to the copyrighted work. *Tanksley*, 902 F.3d at 171 (quoting *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561–62 (3d Cir. 2002)). This is typically a question reserved for the finder of fact; however, if "'no reasonable jury' could find that two works are substantially similar," then copyright cases may be dismissed under Rule 12(b)(6). *Id.*; *see also Cianelli v. Nourison Indus., Inc.*, Civil Action No. 3:19-cv-19147(FLW), 2020 WL 4882500, at *6 (D.N.J. Aug. 20, 2020) ("Here, no reasonable trier of fact could find a striking similarity between the protected aspects of Plaintiff's artwork and Defendants' rugs, and justice is best served by putting a swift end to this meritless litigation." (cleaned up)).

## III.   ANALYSIS

Defendants do not dispute the validity of the copyrights on *Blinded by Love* and the "bible" (*see* Doc. No. 1 ¶¶ 31, 34; *see generally* Doc. No. 25-1), so the Court need only consider whether Defendants copied the protectible elements of Walker's works. Direct evidence of unauthorized copying is typically unavailable, so copying may be shown "through circumstantial evidence" that (1) the defendants had access to the copyrighted work; and (2) there is a "substantial similarity" between the copyrighted and allegedly infringing work. *Tanksley*, 902 F.3d at 173. We consider both factors in turn below.

### A.      Walker Has Not Alleged that Defendants Had Access to *Blinded by Love*

To establish a claim for copyright infringement through circumstantial evidence, a plaintiff must allege that the defendant had access to the copyrighted work. *Id.* A plaintiff can establish "access" in three ways: (1) direct access; (2) access through third parties; and (3) "striking similarity" between the two works. *See Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 505 (D.N.J. 1990), *aff'd*, 947 F.2d 935 (3d Cir. 1991); *Cottrill v. Spears*, No. CIV.A.

6

02–3646, 2003 WL 21223846, at *5 (E.D. Pa. May 22, 2003).  A mere possibility based on conjecture is not sufficient to support a finding of access.  *Cottrill*, 2003 WL 21223846, at *5. Walker has failed to sufficiently allege access under any of the three standards.

**Direct Access.**  A plaintiff may establish direct access by alleging that the defendant "actually viewed, read, or heard the work at issue.  *See Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*, 528 F. Supp. 2d 1106, 1122 (W.D. Wash. 2007), *aff'd*, 373 F. App'x 752 (9th Cir. 2010); *see also Hoffman*, 790 F. Supp. at 505–06.  Allegations that the copyrighted work has been so "widely disseminated to the public" that the defendant can be presumed to have seen it may also show direct access.  *Id.* at 506–07.

Walker alleges that he marketed *Blinded by Love* at trade shows and that "defendants had access to [the novel]."  (Doc. No. 1 ¶¶ 18, 37.)  But nowhere in the Complaint does Walker allege that any of the Defendants were at these trade shows or that he ever transmitted *Blinded by Love* or the "bible" to any of the Defendants.[6]  *Hofmann*, 790 F. Supp. at 506–07 (holding that the plaintiff failed to establish direct access where she conceded that she had never shared the copyrighted work with any of the defendants).

He also alleges that *Blinded by Love* is available for purchase on Amazon (Doc. No. 1 ¶ 17), but he does not allege that the novel has been widely distributed nor does he allege how many people have purchased the novel from Amazon.[7]  "[T]he mere fact that [Walker's] work

---

[6] At oral argument, Walker's counsel stated that Walker sold 900 copies of the novel at the Harlem Book Fair; however, this is not included in the complaint, so we cannot consider it.  Even if we could consider this information, the fact that Walker sold 900 copies of his work does not mean that it was "widely disseminated."  *See Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1144 (9th Cir. 2009) (holding that the sale of 2,000 t-shirts did not constitute wide dissemination).

[7] At oral argument, Walker's counsel explained that Walker no longer has access to his Amazon account, so he is unable to identify how many copies of the novel he has sold on Amazon without a subpoena.

was posted on the internet prior to the creation of [Defendants'] work is insufficient by itself to demonstrate wide dissemination." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008). Walker's conclusory allegations that the Defendants can be presumed to have reviewed the novel because it has been posted on Amazon do not support a finding of direct access. *See Art Attacks Ink, LLC*, 581 F.3d at 1144 (holding that the sale of 2000 t-shirts did not constitute wide dissemination); *Buchanan v. Sony Music Entm't*, No. 18-cv-3028 (KBJ), 2020 WL 2735592, *6 (D.D.C. May 26, 2020) ("Buchanan's pleading also lacks any allegations with respect to the scope of that song's dissemination after it was published online; that is, Buchanan does not allege that a mass of people either purchased [the song] or listened to it.").

Even though Walker makes conclusory allegations that *Blinded by Love* "made its way into the possession of [the Defendants]," the Court cannot accept those threadbare allegations as true because the Complaint "contains no factual allegations regarding how" the Defendants accessed *Blinded by Love*. *See Cianelli*, 2020 WL 4882500, at *4; *see also Johnson v. Knoller*, CASE NO. CV 16-7761-R, 2017 WL 5640554, at *2 (C.D. Cal. Sept. 18, 2017) (dismissing copyright infringement lawsuit against the creators and distributors of *Power* where the complaint included only "bare allegations" that the defendants had viewed the copyrighted work).

Further, nowhere in the Complaint does Walker allege that any of the Defendants had direct access to the unpublished "bible" (*see generally* Doc. No. 1); it only alleges that the novel "made its way into the possession of Defendants" (*id.* ¶ 19). Thus, Walker has failed to plead that Defendants had direct access to his "bible." *See Adams v. Musk*, 15-CV-6756 (SLT) (ST), 2016 WL 2757392, at *4 (E.D.N.Y. May 11, 2016) (holding that the plaintiff failed to allege

direct access over work he had "neither published nor licensed for publication").

**Third-Party Access.**   A plaintiff may establish third-party access by alleging that a "third party had possession of plaintiff's work and had concurrent dealings with both plaintiff and defendant." *Cottrill*, 2003 WL 21223846, at *5.   Walker alleges that he promoted *Blinded by Love* at trade shows (Doc. No. 1 ¶ 18), but he does not allege that anyone he shared the novel with at the trade shows had dealings with any of the Defendants, nor does he allege that anyone else with whom he shared the novel had concurrent dealings with any of the Defendants.   *See Hofmann*, 790 F. Supp. at 506–07 (holding that the plaintiff failed to sufficiently allege third-party access where the plaintiff had only sent her work to thirteen third-party companies and two third-party individuals prior to the alleged infringement).   Thus, Walker has failed to plead sufficient facts to support an inference that Defendants had third-party access to *Blinded by Love*

Walker also does not allege that he shared the "bible" with anyone, let alone anyone who had dealings with the Defendants, so he has failed to plead that any of the Defendants had third-party access to the "bible."

**Striking Similarity.**   Where a plaintiff is unable to present any allegations regarding access, he can nevertheless satisfy the access requirement by showing that the two works are "of similarity which is so striking that the possibilities of independent creation, coincidence, and prior common source are, as a practical matter, precluded." *Hofmann*, 790 F. Supp. at 508. "Striking similarity" requires a much higher showing than "substantial similarity."   S*ee id.*   As discussed below, Walker has not even shown that the works are "substantially similar," *see infra* Section III.B, so he certainly has not shown that the works are "strikingly similar," *see Wizkids Creations Co. v. SEPTA Transp.*, No. Civ. A. 02–3249, 2003 WL 21250661, at *4 (E.D. Pa. Feb. 27, 2003) ("Although access may be inferred by proof of 'striking similarity,' . . . this Court

finds nothing remotely similar between the depictions of SEPTA's 'El' and Hackney's 'Flying Carpet.'").  And, because the "bible" is an encyclopedic collection of the characters, plot points, and settings from *Blinded by Love* and *Blinded by Love* is not striking similar to *Power*, the "bible" is likewise not strikingly similar to *Power.  See id.*

*     *     *

Because Walker has failed to allege direct or third-party access and cannot show that the works are strikingly similar, the copyright infringement claims fail.

### B.     Walker Has Not Alleged that the Works Are Substantially Similar

Even if Walker had sufficiently alleged access, his copyright claims would nevertheless fail because *Blinded by Love* and *Power* are not substantially similar.  Works are substantially similar if "a lay-person would believe that the copying was of protectible aspects of the copyrighted work."  *Tanksley*, 902 F.3d at 174 (quoting *Dam Things*, 290 F.3d at 562) (cleaned up).  To determine whether works are substantially similar, the court "performs a side-by-side comparison of the works and, excluding any unprotectable elements, assess[es] whether the works are substantially similar."  *Id.*

Copyright law protects expression, not ideas.  *Id.*  So, in determining whether two works are substantially similar, the court cannot consider similarities between ideas contained in the work.  *Id.* at 175.  Under the doctrine of *scènes à faire*, "situations and incidents that naturally (and not just necessarily) flow from the basic plot premise are . . . not protected."  *Nicassion v. Viacom Int'l, Inc.*, 776 F. App'x 761, 762–63 (3d Cir. 2019).  In *Tanksley*, the Third Circuit explained that *scènes à faire* are unprotected ideas:

> In dramatic works, an important category of unprotected content is *scènes à faire*, or plot elements that flow predictably from a general idea. In a film about a college fraternity, for example, "parties, alcohol, co-eds, and wild behavior" would all be considered *scènes*

10

*à faire* and not valid determinants of substantial similarity.

*Tanksley*, 902 F.3d at 175 (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 296 (6th Cir. 2004)).  After separating out unprotectable ideas (such as *scènes à faire*), the court will compare the elements of the two works, including their characters, settings, plots, events, dialogues, and moods.  *Id.* (citing Robert C. Osterberg & Eric C. Osterberg, *Substantial Similarity in Copyright Law* § 4:2–8 (2011)).  In addition to comparing the standalone elements, courts must also consider similarities between the works' overall "concept[s] and feel[s]."  *Id.* (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003 (2d Cir. 1995)).

Walker argues that the works are substantially similar because the individual characters and the relationships between characters are substantially similar and because the "[p]lot, events, dialogue, and mood are all substantially similar."  (*See* Doc. No. 29-3 at 16, 19.)

The Court considers these alleged points of similarity in turn below.

### 1. *Characters*

Walker argues that the "three most significant characters" in both *Blinded by Love* and *Power* share significant similarities in their "character traits, personalities, and developments" and that "*the relationships between them* are also fundamentally and inextricably similar."  (Doc. No. 29-3 at 16.)

**Andre and Ghost.**  Andre and Ghosts are the protagonists of *Blinded by Love* and *Power*, respectively.  (*Blinded by Love* at 1; *Power*, Ep. 101.)  They are both African American men with goatees who lead drug organizations.  (*Blinded by Love* at 11; *Power*, Ep. 101 at 2:00.)  But "drug dealer" is a prototypical character and is not protected by copyright laws.  *See Tanksley*, 902 F.3d at 175 ("[W]e note that the shared premise of the shows—an African-American, male record executive—is unprotectable. These characters fit squarely within the class of "prototypes" to which copyright protection has never extended."); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d

642, 659–60 (S.D.N.Y. 2011) (explaining that the characters of male wizards who receive formal schooling for wizardry and compete in wizardry competitions constituted "a general prototype too indistinct to merit copyright protection").

Beyond these unprotectable similarities, Andre and Ghost are different.  Andre lives in a two-story, single-family house on the outskirts of Philadelphia (*Blinded by Love* at 13); Ghost lives in a luxe penthouse in the heart of Manhattan (*Power*, Ep. 101 at 9:45).  Andre is a bachelor (*Blinded by Love* at 13); Ghost is married and has three children (*Power*, Ep. 101 at 9:45).  Andre owns a restaurant and real estate business (*Blinded by Love* at 39); Ghost owns a nightclub and laundromats (*Power*, Ep. 101 at 9:45).  Andre wants to expand the reach of his drug enterprise in order to then get out of the drug business (*Blinded by Love* at 11–12); Ghost has already achieved success with his drug business and now he wants to get out of it (*Power*, Ep. 101 at 2:00).  Ultimately, Andre is convicted for his involvement in the Brotherhood, a violent drug organization (*Blinded by Love* at 273); Ghost is never arrested for his involvement in drug trafficking (*see generally Power*).  And Andre is sentenced to death (*Blinded by Love* at 273); Ghost is killed by his own son (*Power*, Ep. 615 at 1:12:14).

***Renee and Angela.***  Renee and Angela are Andre and Ghost's love interests.  (*Blinded by Love* at 16–18; *Power*, Ep. 101 at 34:35.)  Both women are prosecutors, and neither are initially aware of their partners' involvement in the drug trade.  (*Blinded by Love* at 1, 248; *Power* at 34:35.)  But "prosecutor" and "love interest" are unprotectable prototypes.  *See Mena v. Fox Entm't Grp., Inc.*, No. 11 Civ. 5501 BSJ RLE, 2012 WL 4741389, at *13 n.13 (S.D.N.Y. Sept. 29, 2012) (explaining that characters such as "detective" and "murder victim" "would constitute general prototypes too indistinct to merit copyright protection").  Both women also have sisters with whom they have close relationships (*Blinded by Love* at 6–7; *Power*, Ep. 102 at 7:15);

however, the idea of a "sisterly bond" is a prototypical, unprotectable plot, *see Tanikumi v. Walt Disney Co.*, 616 F. App'x 515, 521 (3d Cir. 2015) ("The similarities that [the works] share pertain only to generic plot and theme ideas, not protectable expressions; while both works feature . . . an intense sisterly bond . . . copyright law does not protect such common topics in autobiographical literature and film.").[8]

Otherwise, Renee and Angela share no similarities.  Renee is African American (*Blinded by Love* at 17); Angela is Latina (*Power*, Ep. 101 at 34:35).  Renee is the District Attorney for the City of Philadelphia (*Blinded by Love* at 3); Angela is an Assistant United States Attorney for the Southern District of New York (*Power*, Ep. 101 at 54:01).  Renee met Andre for the first time at the beginning of the novel (*Blinded by Love* at 17); Angela is Ghost's high school sweetheart (*Power*, Ep. 101 at 34:35).  Renee and Andre get married (*Blinded by Love* at 114); Angela remains a mistress as Ghost never divorces his wife (*Power*, Ep. 604).  Renee gets pregnant with Andre's child (*Blinded by Love* at 241); Ghost already has children with his wife, and he does not have any with Angela (*Power*, Ep. 101 at 9:45).  When Renee finds out that Andre is involved in the Brotherhood, she tricks him into confessing (*Blinded by Love* at 270); when Angela finds out that Ghost in involved in the drug trade, she keeps coming back to him and tries to protect him (*Power*, Seasons 2–3).

***Malcom and Tommy.***  Malcom and Tommy are Andre and Ghost's righthand men or Lieutenants, in both their drug organizations and legitimate businesses.  (*Blinded by Love* at 11; *Power*, Ep. 101 at 2:00.)  Each has been friends with his respective boss since childhood. Neither Malcom nor Tommy approve of their bosses' relationships with the prosecutors. (*Blinded by Love* at 11, 137; *Power*, Ep. 101 at 2:00, Ep. 106 at 35:33.)  A Lieutenant or

---

[8] And Renee's sister, a police officer who is investigating the Brotherhood (*Blinded by Love* at 239), is far more integral to the plot of *Blinded by Love* than Angela's sister is to the plot of *Power*.

"righthand-man" character is a generic prototype in works involving drug organizations and is not entitled to copyright protection. *See Counts v. Meriwether*, Case No. 2:14–cv–00396–SVW–CW, 2015 WL 9594469, at *10 (C.D. Cal. Dec. 30, 2015) (explaining that a protagonist "receiving support from her best friend is not protectable"). Other than these unprotectable traits, these characters are otherwise not similar. *Blinded by Love* does not include any storyline about Malcom that does not also involve Andre (*Blinded by Love* at 143–44); *Power*, however, regularly includes storylines about Tommy and his relationship with other people such as his girlfriend and his father that do not involve Ghost (*Power,* Ep. 106 at 35:40). Malcom betrays Andre and the two never reconcile (*Blinded by Love* at 143–44, 214, 220–23); Tommy remains loyal to Ghost throughout the show (*Power*, Ep. 613 at 25:07).

 ***Minor Characters.*** Walker also identifies a number of "similarities" between more minor characters (*see* Doc. No. 29-4); however, these "similarities" cannot accurately be characterized as such. For instance, the fact that the characters in Blinded by Love routinely use the word "cannon" as a term of endearment (akin to "bro" or "dude") is not similar to the fact that Ghost's mentor is named "Kanan" (pronounced "Canaan").[9] Likewise, the fact that a Federal agent who is trying to take down Andre and the Brotherhood is named "Peter James" is not similar to the fact that Ghost's legal name is "James St. Patrick."

 ***Relationship Between Characters.*** Walker contends that, not only are the individual characters similar, but the relationships between the characters are also similar. The main

---

 [9] At oral argument, Walker's counsel argued that Defendants saw the term "cannon" used in *Blinded by Love*, thought the term was an individual's name, and copied it (with a slightly different spelling) for Defendants' character "Kanan" in *Power*. Even drawing all reasonable inferences in Walker's favor, this series of inferences is too far removed from reality. The Court finds that the term "cannon" as used in *Blinded by Love* is obviously not an individual's name and no reader could reasonably think it was a name. (*See, e.g.*, *Blinded by Love* at 14 ("'Yo, M, watch your neck out there, cannon, and get at me later.'"); *id.* at 20 ("'Damn, cannon! This is that . . . shit.'"); *id.* at 92 ("'Hold up, cannon. Watch it with all that name calling,' Storm said [to Mark] then turned to Shamyra.").)

characters in both shows are the protagonist, the love interest, and the Lieutenant or right-hand man.  This dynamic is likely to appear in almost any work with one protagonist and is entirely too generic to be protected under copyright law.  *See Rowe v. Major H. Prods.*, 842 F.2d 335, 335 (9th Cir. 1988) (holding that a generic storyline about a male protagonist's relationship with a female character was not protectable).

And, when viewed on a more granular level, the characters' relationships are different. Andre meets Renee for the first time as an adult while he visits his mother and sees Renee enter her house next door (*Blinded by Love* at 17), but Ghost has known and loved Angela since high school (*Power*, Ep. 101 at 34:35).  Malcom meets Renee for the first time once Andre starts dating her (*Blinded by Love* at 52), but Tommy has also known Angela since he attended high school with her and Ghost (*Power*, Ep. 101 at 34:35).  And Andre and Malcom start the novel as best friends but end up as foes (*Blinded by Love* at 143–44, 214, 220–23), while Ghost and Tommy, despite some disagreements, remain loyal friends throughout the show (*Power*, Ep. 612 at 25:07).

### 2.    *Plot and Events*

At base, *Blinded by Love* and *Power* both tell the story of a drug dealer who falls in love with a prosecutor.  But the story of an unlikely couple falling in love is a tale as old as time. Even if this exact formulation is not commonplace, it is a spin on the classic tale and, ultimately, is too generic to be protected by copyright law.  *See Hobbs v. John*, 12 C 3117, 2012 WL 5342321, at *5 (N.D. Ill. Oct. 29, 2012) (holding that the theme of a Cold War-era love affair between a Ukranian woman and a Russian man was not protectable); *cf. Tanikumi*, 616 F. App'x at 521 ("[T]he similarities that [the works] share pertain only to generic plot and theme ideas, not protectable expressions; while both works feature . . . an untrue lover[] and a resolution in which

the female protagonist comes into her own without the help of a man, copyright law does not protect such common topics in autobiographical literature and film.").

Other than the unprotectable overarching plotline, *Blinded by Love* and *Power* generally tell different stories. *Blinded by Love* tells the story of a Philadelphia neighborhood drug dealer who is looking to make it big and wants to corner the Philadelphia drug market. He falls in love with a prosecutor, they get married, and, when she finds out he is a violent drug trafficker, she tricks him into confessing and turns him in. *Power* tells almost the opposite story—the story of a big-time drug dealer who is looking to get out of the trade. He falls in love (again) with his high school sweetheart, who is now a prosecutor, but he has since married and had three children, so his relationship with the prosecutor never progresses beyond that of sordid affair. And, against the prosecutor's better judgment, when she finds out that Ghost is the head of a drug organization, she follows her heart and tries to protect him.

There is some overlap between the works' more minor subplots, but those subplots are also unprotectable *scènes à faire* that would naturally appear in a story about a drug kingpin falling in love with a prosecutor. Both works include torture scenes, but unfortunately torture is all too par for the course in the drug world, *cf. Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) ("Elements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about the work of policemen in the South Bronx. These similarities therefore are unprotectible as 'scenes a faire' . . . ."), and the specifics of the torture scenes dramatically differ. For example, in *Blinded by Love*, when Andre finds out that one of his associates was an undercover agent, he covers the man's private parts in honey and pours a jar of fire ants over the agent. (*See Blinded by Love* at 95.) Walker does not identify any similar torture scenes in *Power* but merely states that torture "frequent[ly]" appears in *Power*. (Doc. No. 29-4 ¶ 2N.)

16

Similarly, both works include murder scenes, but again unfortunately guns are considered tools of the drug trade for exactly this reason—one can hardly envision a story about a major drug organization that did not include murder scenes.  *Cf. Panton v. Strong*, No. Case No. 2:17-cv-00050-JFW (JEM), 2018 WL 5099666, at *4 (C.D. Cal. Mar. 14, 2018) ("[D]rug-related scenes . . . are non-protectable *scènes à faire* naturally flowing from the basic plot idea of a character who sells drugs and becomes rich.").  And the specifics of the murders, such as the way they are executed and the reasons they are ordered, vastly differ from the novel to the television show.  For instance, Walker argues that the murder of a rival drug dealer who is unwilling to join forces (*see Blinded by Love* at 25) is similar to the murder of a low-level drug dealer who was engaging in a sexual relationship with the boss's underage daughter (*see Power*, Ep. 108), but, other than the *fact* of the murders, there is nothing similar about these two scenes.

As with the murder and torture examples, the other purportedly similar plotlines are, at a high level, *scènes à faire* and, at a more granular level, generally not similar.  The idea of going undercover to infiltrate a rival organization is not protectable, and *Blinded by Love*'s expression of that scene (infiltrating a market by going undercover as a truck driver delivering bread to a mafia head (*Blinded by Love* at 69)) is not similar to *Power*'s expression of that scene (infiltrating a trial by going undercover as a medical aid (*Power*, Ep. 603 at 46:00)).  The fact that two Italians named Tony are killed may seem similar,[10] but in *Blinded by Love*, Tony Manchilli is the leader of a Philadelphia mafia organization who is involved in criminal activity including drug trafficking.  (*Blinded by Love* at 69.)  Manchilli is killed because the mafia will not give up its corner of the South Philadelphia drug market to the Brotherhood.  (*Id.*)  And, in

---

[10] It is not uncommon for two characters to share the same first name.  In fact, in *Blinded by Love*, Walker introduces two different characters named "Frank" *on the same page*.  (*See Blinded by Love* at 29 (introducing minor characters "Frank Rose" and "Frank Boykins").)

*Power*, Tony Teresi is Tommy's estranged father who was killed because he was an informant. (*Power*, Ep. 509 at 52:47.)  *See Sinicola v. Warner Bros., Inc.*, 948 F. Supp. 1176, 1187 (E.D.N.Y. 1996) ("While both Ginos are physically strong and share an Italian–American heritage and the same common Italian first name, such similarities are far outweighed by the characters' dissimilarities.").

Finally, several of the major plotlines from *Blinded by Love* are not present in *Power*.  In *Blinded by Love*, Renee tells Andre about the investigation into the Brotherhood in pillow talk almost every night, unknowingly allowing the organization to stay one step ahead of the authorities.  (*Blinded by Love* at 98.)  In *Power*, Angela speaks far less about her work and Ghost does not even know that she is a prosecutor until Season Two.  (*Power*, Ep. 201 at 51:00.)  In *Blinded by Love*, one of the major plotlines is that Malcom, Andre's Lieutenant, double-crosses Andre and steals a shipment of drugs.  (*Blinded by Love* at 143–44, 214, 220–23.)  *Power* does not include any plotline about Tommy (or any of Ghost's other associates) stealing from Ghost.

Likewise, a number of the major plotlines from *Power* do not appear in *Blinded by Love*. One of the most important recurring plotlines in *Power* is the burgeoning relationship between Angela and Ghost and the love triangle between Angela, Ghost, and his wife.  (*Power*, Ep. 106 at 32:02.)  This plotline does not appear in *Blinded by Love*; the novel hardly tells the reader *how* Andre and Renee fell in love—it just tells the reader that they *did* fall in love.  (*See Blinded by Love* at 50 ("[T]hey willingly fell in love with each other . . . .").)  Other major plotlines that have no analog in *Blinded by Love* include Ghost's wrongful arrest and time in prison (*Power*, Season 4), Ghost's political ambitions (*id.*, Season 6), and Ghost's tumultuous relationship with his son who eventually murders him (*id.*, Seasons 5–6).

In all, aside from the overarching plot line and unprotectable *scènes à faire*, there are not

substantial, material similarities between the works.[11]  The works tell different stories, about

different people, in a different order.  Aside from a handful of minor similarities scattered

throughout, the works are different, and "random similarities are insufficient to establish

substantial similarity." *Tanksley*, 902 at 177.

### 3.   *Dialogue*

Most of the purported similarities in dialogue Walker identifies are not similar in any

respect.  For instance, Walker contends that the phrase "Well if it ain't my big sister, the big time

district attorney" is similar to the phrase "Along with my deputy, A.U.S.A. Valdes, I'll be

leading this task force."  (Doc. No. 29-3 ¶ 3B.)  Other than the passing mention of each woman's

position as a prosecutor, there is nothing similar about these phrases.

Walker only identifies five passable similarities in dialogue:  "damn money" and

"goddamn pound"; "I know this is what you love to do" and "I love this shit and so do you";

"they're either dead or doing life in prison" and "they're either dead or inside"; "all these

businesses are doing well" and "we got more money coming through the drug business than we

ever had before"; and "Did you kill people?  No, I never killed anyone" and "But you ain't never

killed nobody, right? I didn't kill him."  (*See* Doc. No. 29-4 ¶ 3.)  These are common phrases,

and it is not surprising that phrases about money, murder, and prison were used at some point in

a 274-page book and a 63-episode series about drug dealers and their relationships with their

violent drug trafficking organizations.  Further, any purported similarities do not "approach the

extended similarity of dialogue needed to support a claim of substantial similarity." *Panton*,

2018 WL 5099666, at *5 (quoting *Olson v. Nat'l Broad Co.*, 855 F.2d 1446, 1450 (9th Cir.

1988)).

---

[11] The Court understands how Walker could see similarities between his novel and *Power* at a very high level, but such high-level similarities are not protected by copyright law.

**4.      *Mood***

Although both works follow the same high-level storyline, the moods of *Blinded by Love*

and *Power* are different.  *Blinded by Love* is dark, action packed, and fast paced; someone is

murdered almost every other chapter.  Other than a handful of scenes describing sexual

encounters between Andre and Renee, the novel does not tell the story of how the couple fell in

love.  In contrast, *Power* intertwines the emotional story of how Ghost and Angela fell in love

again and how their relationship progressed with the more action-packed, dramatic storylines

about Ghost's success, Tommy's role in the organization, and Ghost's mentor's return from

prison.  In short, *Blinded by Love* is an action novel that happens to include a subplot about love,

but *Power* is equal parts human interest story and action show.  Given these differences, the

moods of the works are not substantially similar.  *See Tanikumi*, 616 F. App'x at 521 (3d Cir.

2015) (holding that the moods of two works were different where one of the works was light-

hearted but the other only explored serious themes); *Shame on You Productions, Inc. v. Banks*,

120 F. Supp. 3d 1123, 1158 (C.D. Cal. 2015) (holding that the mood of two works was not

substantially similar where one of the works was a romance and the other was darker).

*             *             *

Taking these elements into consideration, it is clear that "no reasonable jury . . . could

find that the two works are substantially similar."  *Tanksley*, 902 at 17.  Even when viewing the

purported similarities in the light most favorable to Walker, the individual characters, the

relationships between characters, the storylines, the dialogue, and the overall mood are not

similar, and they certainly are not substantially similar.  *See Nicassio*, 776 F. App'x at 763

(affirming the district court's holding that two works were not substantially similar even though

they shared the same theme because they used "different plot twists, sequences, and

20

expressions"); *Tanksley*, 907 F.3d at 177 ("*Cream* and *Empire* contain dramatically different expressions of plot, characters, theme, mood, setting, dialogue, total concept, and overall feel.").

Accordingly, Walker fails to state a claim for copyright infringement.

### C.      Walker's Claims Are Dismissed with Prejudice

Walker requested that any dismissal be without prejudice and that he be granted leave to take discovery on whether Defendants had access to the novel.  (*See* Doc. No. 29-3 at 15.) "Leave to amend should be freely granted," *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 429 (E.D. Pa. 2020) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)); however, "[l]eave to amend may be denied . . . if amendment would be futile," *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  Here, amendment would be futile.  Even if Walker were able to amend his complaint to plausibly allege access, his claims would nevertheless fail because the works are not substantially similar, and no amount of artful pleading will change that fact.  *See Tanksley v. Daniels*, 259 F. Supp. 3d 271, 304 n.14 (E.D. Pa. 2017), *aff'd*, 902 F.3d 165 (3d Cir. 2018) (dismissing copyright infringement claim with prejudice where the works were not substantially similar).

## IV.      CONCLUSION

For the reasons above, Defendants' Motion to Dismiss (Doc. No. 25) is granted with prejudice.  An appropriate Order follows.